COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Fitzpatrick, Judge Annunziata and Senior Judge Coleman


HELENA L. WOOD

                                                    MEMORANDUM OPINION[*]
v.      Record No. 0999-04-2                              PER CURIAM
                                                    NOVEMBER 16, 2004
HENRICO DEPARTMENT OF SOCIAL SERVICES


                    FROM THE CIRCUIT COURT OF HENRICO COUNTY
                              George F. Tidey, Judge

           (Robin M. Morgan; Davis & Morgan, P.A., on briefs), for appellant.
           Appellant submitting on briefs.

           (Ellen R. Fulmer, Assistant County Attorney; Alexander M. Clarke,
           Jr.; Clarke & Prince, guardian *ad litem* for the minor child, on
           brief), for appellee.  Appellee submitting on brief.


       Helena L. Wood appeals the decision of the trial court terminating her residual parental

rights to her daughter, M.B., pursuant to Code § 16.1-283(C)(2).  Wood advances three arguments

on appeal:  (1) the evidence was insufficient to prove that reasonable and appropriate efforts of

social, medical, mental health and other rehabilitative agencies were made to communicate with her

and strengthen her relationship with her daughter or to remedy the conditions resulting in

continuation of foster care; (2) the evidence was insufficient to prove that Wood failed to

substantially remedy the conditions which created or led to continuation of foster care; and (3) the

evidence was insufficient to prove that termination was in the best interest of her daughter.  Upon

review of the record and briefs of the parties, we find that the evidence was clear and convincing to

support the termination of Wood's residual parental rights.

_____

          [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991). So viewed, the evidence established that Henrico Department of Social Services (HDSS) investigated a complaint of neglect and removed M.B. from her grandmother's and mother's custody. The Henrico Juvenile and Domestic Relations District Court removed M.B. from Wood's custody on November 26, 2001. Wood had weekly visitation with her daughter when foster placement began. Kelly Evans-Mullin, a social worker, provided transportation and supervision for the visits. Evans-Mullin identified several conditions that resulted in foster care placement: Wood's lack of stable housing and employment, inadequate parenting skills, and mental health concerns. Evans-Mullin referred Wood to Hanover and Henrico Mental Health and Mental Retardation Services (MHMR) for mental health counseling, to Stop Child Abuse Now (SCAN) for parenting classes, and directed Wood to maintain employment for four weeks. When Wood failed to consistently attend classes and keep appointments with the service providers, Evans-Mullin reduced visitation to bi-weekly.

Evans-Mullins advised Wood that if she obtained stable housing, maintained stable employment for four weeks, and addressed her counseling needs, she would reinstate weekly visitation. Wood signed a one-year lease, but was ultimately evicted for failing to pay rent. Wood held various jobs, but failed to maintain employment for any significant period of time. When she had worked four weeks at a number of jobs, it became known that Wood was involved in an abusive relationship. Evans-Mullins thus denied Wood's request to increase visitation.

With regard to Wood's counseling needs, although Wood ultimately completed twelve sessions of parenting classes, SCAN reported that it took Wood over a year to complete them. SCAN also noted that Wood continued to require assistance in most areas and recommended she

continue in alternative parenting courses. Wood did not heed the recommendation and did not pursue further help with parenting skills. Evans-Mullin testified that Wood displayed erratic behavior during her visits with M.B. Wood could not adjust her behavior to meet the needs of the child.

Wood worked with Ed Hayes, a licensed clinical social worker with MHMR, for several months. Although Hayes testified Wood met with him regularly and was cooperative and invested in the treatment process, he also reported that she was not able to apply what she learned to reduce the chaos and instability in her life. After two sessions, Hayes referred Wood to Virginia Commonwealth University's Medical College of Virginia (MCV) for treatment through the psychiatry clinic for personality disorders. It took Wood eight months just to complete the financial assistance process, which was required before any treatment could begin. Once she satisfied that requirement, she met with Evelyn Welte once and missed the next five scheduled appointments.

At the time of trial, Wood was again without stable housing and employment. Nevertheless, the trial court gave Wood an additional six months to seek treatment at MCV. Wood continued to cancel appointments, keeping only one. Although MCV started Wood on psychotropic medication, the medical treatment ended because she was then eight weeks pregnant. The trial court found that Wood had not substantially remedied the conditions that resulted in foster placement and terminated her residual parental rights.

ANALYSIS

Code § 16.1-283(C) provides in pertinent part the following:

> [t]he residual parental rights of a parent or parents of a child placed in foster care . . . may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that . . . [t]he parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding

- 3 -

the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end. . . . The court shall take into consideration the prior efforts of such agencies to rehabilitate the parent or parents prior to the placement of the child in foster care.

"The trial court's judgment, when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

Wood first contends that the agencies did not make reasonable and appropriate efforts to remedy the conditions that resulted in foster care placement. HDSS referred Wood to MHMR. HDSS provided transportation to and from mental health appointments, visitation, and SCAN classes. MHMR referred Wood to MCV for proper treatment of her personality disorder and mental health issues. Wood did not meaningfully avail herself of the offered services. Wood took eight months to get into the MCV program and then would not make or keep appointments. Wood took over a year to complete twelve parenting classes and would not attend additional classes to help improve her skills when it was recommended. When Wood showed that she was not capable of managing her daily living skills independently, HDSS arranged for in-home services to help her make and keep appointments, "develop goals and a plan for achieving them, and increase her overall stability and parenting skills." Despite these intensive efforts, Wood failed to maintain any one job for more than two or three weeks, failed to make and keep appointments, failed to follow treatment plans, and was engaged in an abusive relationship. Even when the trial court gave Wood an additional six months to remedy the conditions, she could not follow through. The evidence clearly and convincingly proved that the involved agencies made reasonable and appropriate efforts to assist Wood in remedying the conditions that resulted in foster care placement.

Wood next argues that the evidence was insufficient to prove she did not substantially remedy the conditions that resulted in foster care placement within twelve months. Wood maintains that in the twelve-month period following foster care placement, she did all that was required to increase visitation. She maintained employment for four weeks, albeit at different jobs. She regularly met with Hayes, she was attending SCAN classes, and she had signed a one-year lease. Wood fails to acknowledge, however, that she displayed erratic behavior during visitation. She could not respond appropriately to M.B.'s needs. Wood was involved in an abusive relationship for which she would not seek assistance or counseling. During the almost two years after M.B. was removed, Wood did not improve in any of the areas identified by HDSS. She continued to have unstable housing and employment, she still had inadequate parenting skills, and she failed to follow through with necessary treatment for her mental health issues. Although she was invested in her counseling with Hayes, Hayes noted that Wood could not apply the counseling to her everyday life. The evidence was clear and convincing that Wood had not substantially remedied, within twelve months or almost two years, the conditions that resulted in foster care placement.

Finally, Wood asserts that the evidence was insufficient to prove that termination of her parental rights was in the best interest of the child. When considering termination of a parent's residual rights to a child, "the paramount consideration of a trial court is the child's best interests." Id. at 128, 409 S.E.2d at 463. On review, "[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 795 (1990).

Dr. Linda M. Dougherty, a licensed clinical psychologist, evaluated Wood psychologically and assessed her parenting ability. Dougherty concluded that it was unlikely that Wood would willingly participate in psychotherapy to address her personality disorder. Dougherty explained that

Wood would be particularly difficult to treat and manage because she denies and minimizes her pathology and does not perceive or recognize that she has a problem or is incapable of normal functioning. Further, Dougherty noted that Wood's erratic, unpredictable, and dramatic behavior was detrimental to the child's development and the child was at risk of developing the same or other mental heath problems. Dougherty stated Wood needed intensive, long-term treatment. Wood's failure to follow through with treatment at MCV and her demonstrated lack of initiative in meaningfully addressing her problems evidenced the long road to recovery she faced and continues to face. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990). The evidence was clear and convincing that it was in the best interest of the child to terminate Wood's residual parental rights.

Accordingly, for the above stated reasons, the evidence supported the trial court's determination to terminate Wood's residual parental rights to M.B., pursuant to Code § 16.1-283(C)(2). Accordingly, the judgment of the trial court is affirmed.

Affirmed.